IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT TO SEARCH THE PERSON OF ABU AGILA MOHAMMAD MAS'UD KHEIR AL-MARIMI | No. 1:23-SW-352 |

**AFFIDAVIT IN SUPPORT OF APPLICATION
UNDER RULE 41 FOR WARRANT TO SEARCH AND SEIZE**

I, Christopher T. Rowe, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing a search of a sample of the deoxyribonucleic acid ("DNA") from Abu Agila Mohammad Mas'ud Kheir Al-Marimi ("Al-Marimi") to be collected via buccal or oral swab in accordance with established procedures, and to be analyzed forensically in accordance with the applicable, valid established procedures.

2. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since January 2016. I have more than ten years' additional federal law enforcement experience serving as a Cadet and Commissioned Officer of the United States Coast Guard (USCG). I am currently assigned to the FBI Washington Field Office to an extraterritorial investigations squad responsible for international terrorism investigations emanating from East Europe, Central and South Asia, and North Africa. Since entering duty, I have conducted numerous investigations into terrorism-related activities, weapons of mass destruction, organized and violent crimes, and white-collar crimes. Due to my experience in counterterrorism investigations, I am familiar with the strategy, tactics, methods, tradecraft, and techniques of

terrorists and their agents. I have attended numerous trainings regarding counterterrorism strategies and international terrorism. I have also worked with other law enforcement and intelligence agencies involved in counterterrorism, traveled overseas in connection with sensitive counterterrorism matters, and interviewed individuals associated with terrorism. I have received both formal and informal training from the FBI and other government agencies regarding tactical operations, explosives, post-blast investigations, and evidence collection. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

3.      Through my training and employment, I am also familiar with the fact that each person has a unique DNA composition. DNA isolated from blood, hair, skin cells, or other genetic evidence left at the scene of a crime or left on evidence of a crime can be compared with the DNA of an individual to identify an individual as a potential suspect, or exclude an individual as a potential suspect.

4.      I base the facts set forth in this affidavit upon my personal knowledge, information obtained during my participation in this investigation, review of documents to include business and bank records and official government records, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein.

5.      Because this affidavit is being submitted for the limited purpose of search warrant for a buccal swab of Al-Marimi, I have not set forth every fact learned during this investigation. I make this affidavit based, in part, on my personal knowledge and observations derived from my participation in this investigation, information provided by other law enforcement officers, reports

and data provided by other officers, which I have read and reviewed, and, in part, upon information and belief.

6.  On the basis of this familiarity, and on the basis of other information your affiant has reviewed and determine to be reliable, I allege the facts to show there is probable cause to believe that evidence of violations of destruction of an aircraft resulting in death, in violation of 18 U.S.C. §§ 32(a)(2), 34, and 2; destruction of an aircraft resulting in death, in violation of 18 U.S.C. §§ 32(a)(1), 34, and 2; and destruction of a vehicle used in foreign commerce by means of an explosive, resulting in death, in violation of 18 U.S.C. § 844(i) (hereinafter, the "SUBJECT OFFENSE(S)"), will be found located in the cheek/saliva (buccal swab[1]) of Al-Marimi.

### FACTUAL BASIS SUPPORTING PROBABLE CAUSE

7.  On December 21, 1988, Pan Am Flight 103 ("Pan Am 103") exploded over Lockerbie, Scotland, while *en route* from London's Heathrow Airport to John F. Kennedy International Airport in New York City. The explosion resulted in the deaths of 270 people, 259 of whom were aboard the flight, with another 11 residents of Lockerbie killed in an inferno caused by falling airplane debris that destroyed an entire city block instantaneously. The victims included citizens of 21 countries, including 190 Americans and 43 citizens of the United Kingdom.

8.  The ensuing investigation revealed that the destruction of Pan Am 103 was caused by the detonation of an explosive device (*i.e.,* "an improvised explosive device," or a "bomb"), that was placed inside a copper-colored suitcase ("the IED suitcase") stored within the aircraft's

---

[1] As the Supreme Court has recognized, a "buccal swab" is a "common procedure" that involves "wiping a small piece of filter paper or a cotton swab similar to a Q-tip against the inside cheek of an individual's mouth to collect some skin cells." *Maryland v. King*, 133 S. Ct. 1958, 1967-68 (2013). This procedure is "quick and painless" and poses "no threat to the health or safety" of a defendant. *Id*. at 1968.

forward cargo compartment. The government anticipates that its evidence will show that Al-Marimi built the bomb that brought down Pan Am 103. Al-Marimi was a bomb maker for the Libyan intelligence service (known as the External Security Organization or "ESO") from 1973 until 2011. During that time period, under the former regime of Libyan dictator Muammar Qaddafi ("Qaddafi"), the ESO conducted acts of terrorism against other nations. Al-Marimi worked in the Technical Department of the ESO, including as a "technical expert" handling Semtex explosives and building bombs for the ESO. Al-Marimi has admitted to participating in a number of ESO operations outside of Libya, including the Pan Am 103 bombing and the bombing of the LaBelle Discotheque on April 5, 1986.

9.  Evidence collected in the investigation revealed that ESO personnel, including Al-Marimi, traveled between Malta and Libya in December 1988, including on the day of the bombing. On December 21, 1988, Al-Marimi checked in to a Libyan Arab Airlines flight (LN-147) bound for Tripoli, Libya. Passengers and luggage for LN-147 checked in at the Malta airport at an adjacent airport gate to Air Malta flight (KM-180), which was traveling from Malta to Frankfurt, West Germany, and both gates were open at the same time. The IED suitcase, which contained a bomb, was placed onto KM-180 with an American aircraft baggage tag placed on it. The IED suitcase traveled from Malta to Frankfurt on KM-180, as Al-Marimi and another ESO operative were safely heading to Tripoli on LN-147. Upon the IED suitcase's arrival in Frankfurt, it was then loaded onto Pan Am Flight 103A, which traveled from Frankfurt to London-Heathrow, and the IED suitcase was then transferred to Pan Am Flight 103 bound for New York.[2]

---

[2] There were no passengers holding tickets for an itinerary for Malta-Frankfurt-Heathrow, and then on to Pan Am Flight 103.

10.     Forensic analysis of items recovered from the debris identified clothing from inside the IED suitcase, some of which were purchased at a shop in Malta by ESO operative Abdel Baset Al-Megrahi ("Al-Megrahi").  Al-Marimi also admitted to purchasing items of clothing to put in the IED suitcase prior to the IED suitcase being placed on flight KM-180.  The IED suitcase and items in the suitcase were processed for DNA analysis and both full and partial profiles were recovered.

11.     On November 29, 2022, a Federal Grand Jury in the District of Columbia returned an indictment against Al-Marimi, charging the SUBJECT OFFENSES.  Probable cause therefore exists to believe that the Al-Marimi has committed crimes for which he has been indicted.

12.     Al-Marimi was arrested on December 11, 2022.

13.     Al-Marimi is currently detained within the Eastern District of Virginia.

14.     There is probable cause to search Al-Marimi for a saliva sample containing his DNA because there is a fair probability that his DNA is evidence of a crime.

**FORENSIC ANALYSIS OF EVIDENCE**

15.     Based on my training and experience, I know that biological evidence, such as blood, skin cells, and DNA, can be transferred to items during physical contact.  Biological evidence can indicate where an individual may have been or if physical contact has occurred between the person and an item.  Based on my training and experience, I also know that biological evidence can be present for extended periods of time.  Furthermore, I also know that biological evidence may not be visible to the naked eye and can remain on surfaces even when attempts have been made to remove them.

16.     Based on my training and experience, I know the following:

      a.      DNA analysis may be conducted on bodily fluids or biological tissues recovered from items of evidence. The DNA testing results obtained from evidence samples are compared to DNA from reference samples collected from known individuals. I have been trained in the collection of such reference samples and have personally collected such samples in the past via "buccal swabs," which are swabs of a known individual's inner-cheek. Comparative analyses may be able to associate suspects with evidence items or with a crime scene.

      b.      Nuclear DNA is the most discriminating type of DNA and is typically analyzed in evidence containing body fluids, skin cells, bones, and hairs that have tissue at their root ends. This type of DNA testing has the ability to identify or exclude an individual as being the source of the DNA obtained from an evidence item.

      c.      Mitochondrial DNA (mtDNA) is a form of DNA that is transmitted from mother to child in a complete set; therefore, anyone in the maternal lineage will have the same mtDNA profile. This type of DNA testing can be used on evidence items such as naturally shed hairs, hair fragments, bones, and teeth. mtDNA analysis is highly sensitive and may allow scientists to obtain information from items of evidence containing little biological material. Because multiple individuals can have the same mtDNA profile, unique identifications are not possible from mtDNA analysis.

17.      Based on the foregoing facts, your affiant believes there is probable cause to believe that the IED suitcase and its contents was touched by Al-Marimi. The affiant therefore believes

there is probable cause to obtain a buccal swab from Al-Marimi, to compare the DNA collected from the IED suitcase and its contents recovered in 1988 and 1989 to Al-Marimi's DNA.

## CONCLUSION

18.     Based upon the above-referenced facts, your affiant submits that there is probable cause to believe that evidence of the SUBJECT OFFENSES will be located in the cheek/saliva (buccal swab) of Al-Marimi.

Respectfully submitted,



Christopher T. Rowe
Special Agent
Federal Bureau of Investigation


Subscribed and sworn by phone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on June 23, 2023.


*William E. Fitzpatrick*
The Honorable William E. Fitzpatrick
United States Magistrate Judge

Alexandria, Virginia

## ATTACHMENT A

*Person to be Searched*

The person to be searched is Abu Agila Mohammad Mas'ud Kheir Al-Marimi, with the estimated date of birth of January 1, 1951, and NCIC# W155539963, who is depicted in the photo provided below. He is an inmate at the Alexandria Adult Detention Center in Alexandria, Virginia, within the Eastern District of Virginia.



## ATTACHMENT B

*Property to be seized from person of Abu Agila Mohammad Mas'ud Kheir Al-Marimi*

All items constituting evidence, fruits, and/or instrumentalities of violations of destruction of an aircraft resulting in death, in violation of 18 U.S.C. §§ 32(a)(2), 34, and 2; destruction of an aircraft resulting in death, in violation of 18 U.S.C. §§ 32(a)(1), 34, and 2; and destruction of a vehicle used in foreign commerce by means of an explosive, resulting in death, in violation of 18 U.S.C. § 844(i) (hereinafter, the "SUBJECT OFFENSE(S)"), by Abu Agila Mohammad Mas'ud Kheir Al-Marimi, as described in the search warrant affidavit, including, but not limited to, the following:

a. A sample of the deoxyribonucleic acid ("DNA") of the person identified in Attachment A to be collected via buccal or oral swab in accordance with established procedures, and to be analyzed forensically in accordance with the applicable, valid established procedures.